Charles M. DOYLE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 669–85C.

United States Claims Court.

May 25, 1990.

Ira M. Lechner, Washington, D.C., for plaintiffs.

Mark H. Duesenberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

MOODY R. TIDWELL, III, Judge:

The case before the court, consolidated with several other cases, is the latest of a series of companion cases brought by federal civilian fire fighters and law enforcement personnel against the government under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–219, *as amended in 1974*, Pub.L. No. 93–259 § 6(c)(1)(A), 88 Stat. 55. *See Cook v. United States*, 855 F.2d 848, 849 (Fed.Cir.1988) (*Cook II*).[1] Plaintiffs were already awarded statutory overtime back pay from January 1, 1978, as a result of the 1974 FLSA amendments, and now seek (1) equitable tolling of the two-year statute of limitations, whereupon jurisdiction lies with this court; and (2) liquidated damages for defendant's delay in

---

1. See the Attachment to this decision for a complete list of the consolidated cases.

making the overtime payments. The parties have submitted cross-motions for summary judgment.

## FACTUAL BACKGROUND

The 1974 FLSA amendments provided that federally employed fire fighters and law enforcement personnel were entitled to FLSA overtime payments for hours worked after January 1, 1978 in the excess of the lesser of (1) 216 hours in a twenty-eight day work period, or (2) "the average number of hours (as determined by the Secretary [of Labor] pursuant to [a study mandated by] section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work period of 28 consecutive days in calendar year 1975." 29 U.S.C. § 207(k). *See United States v. Cook,* 795 F.2d 987 (Fed.Cir.1986) (*Cook I*). In conducting the study, the Secretary of Labor was partially guided by *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which invalidated the 1974 FLSA amendments' inclusion of state and local fire fighters and law enforcement personnel in the overtime hour computation.[2] *Cook I,* 795 F.2d at 989. Consequently, based on the hours worked solely by federal employees, the Secretary established as the number of hours in a twenty-eight day work period above which fire fighters and law enforcement personnel were entitled to FLSA overtime back pay, beginning in 1978, as 216 hours and 186 hours respectively. *Id.*

In *Jones v. Donovan,* 25 Wage & Hour Cas. (BNA) 380, 1981 WL 2300 (D.D.C. 1981), *aff'd mem.,* 675 F.2d 1340 (D.C.Cir. 1982) (*Jones I*), an action was brought on behalf of federal employees engaged in fire fighting and law enforcement to challenge the Department of Labor's interpretation of the FLSA provisions governing overtime compensation. The District Court for the District of Columbia ordered the Secretary to recompute the overtime standards by including the state and local data. The court rejected the government's position

that the state sovereignty doctrine enunciated in *National League of Cities* required exclusion of data from state and local governments in the development of a report on overtime standards. *Cook I,* 795 F.2d at 989. As a result, the new study reduced the hours over which federal fire fighters and law enforcement personnel should have received overtime back pay to 212 and 171 hours respectively. 48 Fed. Reg. 40,518–19 (1983); *see Cook I,* 795 F.2d at 989. The hourly reduction resulted in a violation of section seven of the FLSA which in turn triggered the remedial measures of section sixteen. 29 U.S.C. §§ 207, 216(b). Accordingly, the Office of Personnel Management (OPM), which is responsible for administering the FLSA in the federal sector, directed that all federal fire fighters and law enforcement personnel, including those not included in the *Jones I* suit, be awarded overtime back pay based on the Secretary's new study. *See Cook I,* 795 F.2d at 989.

Section sixteen of the FLSA, 29 U.S.C. § 216(b), provides that any employer, including any federal agency, which violates the overtime provisions of section seven of the FLSA, 29 U.S.C. § 207, shall be liable to the affected employees in the amount of their unpaid overtime compensation and "in an additional equal amount as liquidated damages." However, the award of liquidated damages is discretionary such that if the employer can establish that the acts giving rise to the FLSA liability were undertaken in "good faith" and it had "reasonable grounds for believing" that its actions were not a violation of the FLSA, the court may decline to award any liquidated damages or it may award any amount that does not exceed the amount specified in section sixteen. *Cook I,* 795 F.2d at 989; *see* 29 U.S.C. § 260. Two district court cases involving fire fighters and law enforcement personnel provide instructive examples of the discretionary nature of the award of liquidated damages under the FLSA. *See Jones v. Donovan,* 26 Wage & Hour Cas. (BNA) 1602, 1984 WL 3193 (D.D.

C.1984) (*Jones II*); *Lanehart v. Marshall*, 26 Wage & Hour Cas. (BNA) 1654 (D.Md. 1984).

In *Jones II* and *Lanehart*, the respective district courts found that the government had acted in good faith and had reasonable grounds to believe that hours worked by state and local government personnel need not have been included in the Secretary's study. Notwithstanding this finding, the courts awarded partial liquidated damages equal to the amount of interest due on the plaintiffs' unpaid overtime compensation. The government did not appeal the *Jones II* nor the *Lanehart* decision and, as ordered by the respective courts, paid liquidated damages to plaintiffs in both cases. In addition, the government awarded overtime pay to all similarly entitled employees, whether parties to the district court cases or not, but did not pay liquidated damages to non-plaintiff employees.

After the *Jones II* and *Lanehart* decisions, seven fire fighters who believed they were not plaintiffs in either prior actions filed their own action in the District Court for the Eastern District of New York. *Cook v. United States*, No. CV85–1467 (E.D.N.Y. Dec. 23, 1985). The district court awarded liquidated damages, compelled the government to produce the names and addresses of specific federal fire fighters and law enforcement personnel, and tolled the statute of limitations. That case (*Cook I*) was appealed to the Federal Circuit. 795 F.2d at 987. The Court of Appeals for the Federal Circuit affirmed the district court's order compelling the government to produce the names and addresses of specific federal fire fighters and law enforcement personnel. *Id.* at 994. In addition, the court of appeals remanded that portion of the order purporting to toll the statute of limitations as prematurely issued. In *Cook v. United States*, 855 F.2d 848, 851 (Fed.Cir.1988) (*Cook II*), the court of appeals determined the accrual date of the fire fighters' and law enforcement personnels' claims as September 22, 1983—the date OPM published the results of the Secretary of Labor's recomputed study determining hours of work. The court of appeals remanded the

case to the district court to compute damages and consider the tolling of the statute of limitations if it appropriately arose. On remand, the district court transferred the claims of the remaining plaintiffs to the United States Claims Court for consolidation with the pending *Doyle* case. *Cook v. United States*, No. CV85–1467 (E.D.N.Y. June 12, 1987).

## DISCUSSION

 Cross-motions for summary judgment are appropriate when there are no genuine issues of material fact in dispute and one party is entitled to judgment as a matter of law. RUSCC 56(c). In reviewing each motion, a genuine issue of material fact is present if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A fact is material if it would affect the outcome of the suit. *Id.* Moreover, the materiality of a fact is determined by the substantive law applicable to the case. *Id.* The present facts are not in dispute. The outcome of the case, therefore, turns on whether one or the other party is entitled to judgment as a matter of law.

The cases before the court represent a consolidation of several companion cases involving the resolution of two issues: (1) whether the court has jurisdiction to hear the case; and (2) if the court determines that jurisdiction lies, whether plaintiffs may, should, or should not be awarded liquidated damages under 29 U.S.C. § 216(b).

## I. JURISDICTION

 A claim accrues when all the events have occurred which fix liability and entitle plaintiffs to institute an action. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988). It is undisputed that *Cook II* established the statute of limitation accrual date of this cause of action as September 22, 1983. Plaintiffs filed their complaint on November 14, 1985, more than two years but less

than three years after the accrual date. Under 29 U.S.C. § 255(a), the applicable statute of limitations period is two years except where the violation is "willful" whereupon the cause of action may be commenced within three years after the accrual date.[3] Accordingly, in order for this court to obtain jurisdiction to reach the issue of liquidated damages, it must be shown that either defendant "willfully violated" the FLSA, and thereby invoked the three-year statute of limitations, or that the two-year statute of limitations should be tolled.

## A. Willful Violation of the FLSA

In *Cook II*, the Court of Appeals for the Federal Circuit propounded a new standard for determining what constituted "willful;" that standard binds this court. *Cook II* held that for "a federal agency that has in good faith accepted and followed the advice of the Secretary of Labor ... a new *per se* rule is now appropriate[:] ... any mistake in responding to the demands of the FLSA is not willful." *Cook II*, 855 F.2d at 850. In the present action, the parties agreed that defendant acted in good faith when it followed the Labor Secretary's overtime requirements which mistakenly excluded state and local fire fighters and law enforcement personnel from the study. Thus, under *Cook II's per se* rule as to a good faith violation of the FLSA, defendant's conduct as a matter of law was not willful and the statute of limitations may not be extended to three years.

## B. Tolling of the Statute of Limitations

The remaining alternative for this court to properly obtain jurisdiction and for plaintiffs to recover a liquidated damages award is through tolling of the statute of limitations.

### 1. Congressional Intent on Tolling

As is evident from *Cook I*, 795 F.2d at 994, tolling is an appropriate means of ob-taining jurisdiction. The court maintained in dicta that "[w]hen and if the time comes, the district court will presumably apply the doctrine of equitable tolling consistently with Congress' intent in enacting the particular statutory scheme set forth in [the] FLSA." *Id.* Thus, this court must consider whether the doctrine of tolling is applicable by this court and, if so, consistent with Congress' intent in enacting the statutory scheme of the FLSA.

Plaintiffs attempted to manifest congressional intent with *Bowen v. City of N.Y.*, 476 U.S. 467, 478–80, 106 S.Ct. 2022, 2028–30, 90 L.Ed.2d 462 (1986) (equitable tolling was proper where it was consistent with the statutory scheme and equitable principles to do so), and *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967) (equitable tolling was appropriate where it was "more consistent with the overall congressional purpose" and "nowhere eschewed by Congress"). In *Bowen*, the congressional intent found sufficient to toll the statute of limitations was that "[t]he statute of limitations we construe in this case is contained in a statute that Congress designed to be 'unusually protective' of claimants." *Bowen*, 476 U.S. at 480, 106 S.Ct. at 2030. Furthermore, the Court was influenced by Congress' authorizing the tolling of the statute in certain cases in consideration of fairness to claimants. *Id.* In *Honda*, depositors holding yen certificates in the Yokohama Specie Bank brought suit to recover those assets of the bank located in the United States that had been seized as enemy property. In 1946 Congress provided in section thirty-four of the Trading with the Enemy Act, 50 U.S.C.App. § 1 et seq., for payment from the seized assets to the American citizen or resident creditors of persons whose property was vested. The Supreme Court found that where the public treasury was not directly affected, and the House and Senate Reports indicated a strong moral obli-

---

**3.** Section 255(a) is technically not part of FLSA but, rather, a part of the Portal-to-Portal Pay Act enacted in 1947. However, the plain language of section 255(a) incorporated it into the FLSA by permitting the filing of "[a]ny action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor and Standards Act of 1938, as amended [29 U.S.C. §§ 201 to –219]" within specified time limitations. 29 U.S.C. § 255.

gation to satisfy the claims, tolling was proper, as it was nowhere eschewed by Congress. *Honda,* 386 U.S. at 501, 87 S.Ct. at 1196.

Although both *Bowen* and *Honda* address tolling and the necessity of applying it in accordance with the underlying legislative intent, neither case provides guidance of specific congressional intent surrounding the FLSA. Plaintiffs here have simply not been able to supply evidence of legislative intent directly on the issue of whether tolling is appropriate under the FLSA. However, plaintiffs did provide evidence of the general congressional intent surrounding the FLSA. For example, it was stated:

Coverage should be interpreted broadly; and every effort should be made to insure that those employees who have been the victims of violations of this act are made whole.

Improving the Fair Labor Standards Act is a significant achievement only if it is followed by a vigorous enforcement effort designed to bring covered employers into compliance with the new standards as quickly as possible.

120 CONG.REC. S4702 (daily ed. Feb. 28, 1974) (Statement of Sen. Williams). This is supported by a House Report on the 1974 amendment of the FLSA. It was reported that although the FLSA had broad objectives, including breadth of coverage, the present coverage of the act was much more confined, and thus needed to be expanded to fulfill those broad objectives. "The Act declared its purpose in bold and sweeping terms. Breadth of coverage was vital to its mission. Its scope was stated in terms of substantial universality...." H.R.REP. No. 913, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.CODE & ADMIN.NEWS 2811, 2817 (quoting *Powell v. United States Cartridge Co.,* 339 U.S. 497, 516, 70 S.Ct. 755, 765, 94 L.Ed. 1017 (1950)). The history of the FLSA itself is one of expansion in coverage. H.R.REP. No. 913, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.CODE & ADMIN. NEWS 2811, 2814–18.

■ Although the congressional intent evidences that coverage is to be broad and claimants are to be made whole, it likewise indicates that liquidated damages are not necessary in all cases:

This measure relieves the employer of being mulcted in damages where he has followed and relied upon a decision of a court of record in a case in which he is a party defendant or if he has obeyed in good faith regulations, orders, rules.... It would be unfair to permit liquidated damage against employers who followed the orders and the judgments of the courts and the orders and directives of those who administer the wage-and-hour law, the directives of the President and the other executive agents and departments of the Government.

93 CONG.REC. H1500 (daily ed. Feb. 27, 1947) (Statement of Rep. Robsion). "The purpose of this provision is to protect the employer against the retroactive effect of changes in administrative regulations, etc. ... Congress has the power to provide protection to employers who have complied in good faith with administrative regulation, interpretation, or enforcement practices." H.R.REP. No. 71, 80th Cong., 1st Sess., *reprinted in* 1947 U.S.CODE CONGR. SERV. 1029, 1036. From this language it appears that in cases where the government has acted in good faith, as here, Congress did not think liquidated damages would be necessary. As there is no apparent congressional intent to the contrary, tolling of the statute of limitations would not be necessary. Plaintiffs would not necessarily be any more whole since it is not clear that liquidated damages would be awarded even if the statute were tolled, as the court has discretion to award liquidated damages where there has been good faith on the part of defendant. If on the other hand, defendant's actions could be deemed willful, rendering section 260 inapplicable, tolling would be appropriate. However, in the case of willfulness, Congress eliminated the need for equitable tolling by expressly providing that the statute of limitations is extended to three years. 29 U.S.C. § 255(a). Consequently plaintiffs are adequately protected under the FLSA.

2. Factual Circumstances to Justify Tolling

Even ignoring this conclusion gleaned from legislative intent, the particular facts

of this case do not convince the court that tolling is necessary or warranted.

■ *a. Lack of notice.* Plaintiffs maintained that the two-year statute of limitations should be equitably tolled primarily because of defendant's alleged failure to provide notice to plaintiffs of the FLSA's applicability to plaintiffs. However, the facts are that defendant effectively actually notified plaintiffs through FPM Letter 551–20 on September 22, 1983 that they were to receive overtime back pay pursuant to the FLSA. By that time, at the latest, plaintiffs were clearly on actual notice of their potential claims and very much in a position to seek further recovery as liquidated damages if they so chose to inquire about their individual claims. The burden of seeking further relief fell on plaintiffs once they received this notice. Defendant was not required to provide further notice to plaintiffs of any future causes of action. This reasoning also negates plaintiffs' argument that the statute of limitations should be tolled during the pendency of the litigation over the production of names and addresses of potential plaintiffs, or until the conclusion of *Cook II* or the District Court's dismissal of *Jones II*.[4] The hard fact is, plaintiffs were already on actual notice of their potential claims despite any alleged improper action or inaction of the government after giving that notice.

■ *b. Insufficient notice.* Plaintiffs contended that they did not receive "sufficient notice" because defendant removed the FLSA poster which provided plaintiffs with knowledge of the FLSA's applicability to them. This action by defendant has no bearing on whether defendant provided plaintiffs with sufficient notice. As stated above, plaintiffs had actual notice of their claims through FPM Letter 551–20. On May 16, 1979, OPM rescinded the poster requirement because it was obsolete. OPM's decision to withdraw the require-

ment for agencies to display the poster was consistent with its authority to administer the FLSA, *see American Fed'n of Gov't Employees, AFL–CIO v. OPM*, 821 F.2d 761, 770 (D.C.Cir.1987), and did not render the actual notice insufficient.

■ *c. Secretive conduct.* In a related issue to plaintiffs' "insufficient notice" argument, plaintiffs contended that defendant's conduct was secretive and prevented plaintiffs from knowing of FLSA violations. However, since both parties agreed that defendant acted in good faith and on reasonable grounds as permitted by the FLSA, this court finds no merit to plaintiffs' contention. Defendant clearly did not, fraudulently or with any deceitful intent, conceal from plaintiffs their rights under the FLSA. Defendant effectively notified plaintiffs through FPM letter 551–20 that they were to receive overtime back pay pursuant to the FLSA and, in many instances, plaintiffs were invited to submit claims for "Firefighter FLSA Overtime due me." Where a plaintiff has sufficient opportunity to discover the facts, its injury cannot be said to be "inherently unknowable." *McDonnal v. United States*, 9 Cl.Ct. 629, 633 (1986). "[T]he law assumes that 'the means of knowledge are the same thing in effect as knowledge itself' ... thus, only blameless ignorance can suffice to relieve a party from the operation of the statute of limitations." *Mitchell v. United States*, 13 Cl.Ct. 474, 477 (1987) (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807 (1879)); *see also Kay v. Johnson & Johnson*, 722 F.Supp. 874, 881 (D.Mass.1989); *Moll v. United States Life Title Ins. Co. of N.Y.*, 700 F.Supp. 1284, 1293 (S.D.N.Y.1988). For these reasons plaintiffs had adequate opportunity to know of their claims against defendant and the opportunity, within a reasonable time, to file such claims.

The court can find neither need nor reason to justify a tolling of the statute. Ac-

---

**4.** Plaintiffs based this argument, that the statute of limitations should be tolled until the conclusion of *Cook II* or until the district court's dismissal of *Jones II*, on the principle of *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1196, 18

L.Ed.2d 244 (1967). However, as discussed above, the Supreme Court in *Honda* used the specific legislative intent of a statute not applicable to the FLSA.

cordingly, the statute of limitations will not be tolled.

### C. *Revival of Statute of Limitations*

■ In addition to their equitable tolling arguments, plaintiffs alleged that despite the initial accrual date, payment of any portion of FLSA back pay revived the entire cause of action for both back pay and liquidated damages so that the date of any later payment of back pay became the new accrual date, as a matter of law, for the remainder of the cause of action for liquidated damages. Defendant refuted this allegation, stating first, that *Cook II* tolled the accrual date to September 22, 1983 and, therefore, there was no legal reason to revive the accrual date when the overtime back pay was paid after that date. Second, defendant stated the 1947 amendments to the FLSA render inapplicable the cases plaintiffs cited in support of the revival doctrine.

The court is not convinced by defendant's first argument. *Cook II* did not toll the statute of limitations. It merely established the initial accrual date as September 22, 1983, the date FPM Letter 551–14 was issued. Until FPM Letter 551–14 was issued, all the events had not occurred that would fix the liability of the government and create a cause of action. *Cook II*, 855 F.2d at 849. Establishing the initial accrual date does not in and of itself invalidate the revival doctrine. The revival doctrine would assume an earlier accrual date and establish it anew at a later point in time, i.e., when partial payment was made.

There is merit to defendant's second argument. The essence of the revival doctrine is that the payment of any amount of debt (back pay in this case) is acknowledgment of the debt, thereby reviving the entire cause of action. Before the 29 U.S.C. § 260 good faith defense, courts were without discretion to waive the imposition of liquidated damages. If plaintiffs were entitled to back pay, plaintiffs would also be entitled to liquidated damages. The liability for back pay and liquidated damages were one, single, indivisible liability and could not be discharged by the payment of

part of it. *Hayes v. Cuneo Printing Indus.*, 6 Wage & Hour Cas. (BNA) 344, 346 (N.D.Ill.1946). Under this reasoning, the payment of back pay would be an acknowledgment of a debt for liquidated damages, as well as for back pay. However, in this case, the section 260 good faith defense does not render the making of back pay an acknowledgment of a debt to pay liquidated damages. Section 260 states that if the court finds there has been good faith, the court does not have to award liquidated damages but may do so at its own discretion. Therefore, by paying back pay, defendant has not acknowledged that it is also required to pay liquidated damages. Defendant is aware that if it acted in good faith it might not be held liable for liquidated damages. 29 U.S.C. § 260.

> The force of an acknowledgment [sufficient to toll the statute of limitations] depends in most states upon the inference to be drawn from it of an intention to pay. If there is anything in the surrounding circumstances, even though not in the words of the acknowledgment, tending to negative such an inference or to leave it in doubt, the indebtedness will not be revived.

*International Potato Corp. v. United States*, 161 F.Supp. 602, 142 Ct.Cl. 604, 608 (1958) (brackets in original and emphasis omitted) (quoting W. JAEGER, WILLISTON ON CONTRACTS § 170 (3d ed. 1957)). In the present case, the section 260 good faith defense operates to negate an inference of acknowledgment of indebtedness. Therefore, in accordance with *International Potato*, the indebtedness will not be revived. When there has been good faith on the part of defendant, the payment of back pay does not in and of itself revive a cause of action for liquidated damages.

### D. *Continuing Claims Doctrine*

■ Events which take place within the limitations period may establish continuing claims not barred by the statute of limitations. *E.g., Daniels v. United States*, 407 F.2d 1345, 1346 n. 1, 187 Ct.Cl. 38 (1969). Where liability involves the failure to make proper overtime payments, a cause of action accrues as soon as the

payor fails to pay what the law requires. *Beebe v. United States,* 640 F.2d 1283, 1293, 226 Ct.Cl. 308 (1981); *Friedman v. United States,* 310 F.2d 381, 385, 159 Ct.Cl. 1 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); *see Bevelheimer v. United States,* 4 Cl.Ct. 558, 561 (1984). To simplify, every paycheck after the September 22, 1983 accrual date, when defendant was required to pay overtime but did not, established the accrual of a new cause of action with the concomitant two-year statute of limitations to pursue that claim as well as fresher claims. Consequently, plaintiffs who did not receive FLSA overtime back wages until within two years of the filing of this case would have a continuing claim for those back wages over which this court may exercise jurisdiction. It is only this defined group of claims, and those defined in section E below, that are not barred by the statute of limitations and to which the liquidated damages section discussed below would apply. This reasoning is in accord with the Federal Circuit's holding in *Cook II.* Although that court set the accrual date as September 22, 1983, the court said the continuing claims doctrine was to be applied to claims for pay periods after September 22, 1983. "The trial court judgment should be modified on the remand to show that claims, if any for pay periods after September 22, 1983, did not accrue until the end of those pay periods. We are not certain there are none." *Cook II,* 855 F.2d at 851.

**E.** *Soldiers' and Sailors' Civil Relief Act*

Section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, *as amended,* 50 U.S.C.App. § 525, states that the time a litigant serves on active duty in United States military service must be excluded from the statute of limitations period. *See, e.g., Bickford v. United States,* 656 F.2d 636, 639, 228 Ct.Cl. 321 (1981). For plaintiffs who served on active military duty, the statute of limitations would be two years from the September 22, 1983 accrual date or the subsequent continuing claim pay period date plus the amount of time served in the military on or after September 22, 1983. Accordingly, the liquidated

damages section discussed below would apply to those plaintiffs whose time in military service would toll the statute of limitations such that their filing would not be barred.

## II. LIQUIDATED DAMAGES

The FLSA, 29 U.S.C. § 216(b), permits an award of liquidated damages from an employer in violation of sections six and seven of the FLSA, 29 U.S.C. §§ 206–207, for unpaid overtime compensation. In the present case, the government violated section seven when it incorrectly relied upon *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and excluded hours worked by state and local government employees in the Secretary's study to determine the correct number of hours worked above which federal employees should receive overtime compensation. *Cook I,* 795 F.2d at 989. Defendant contended that because it acted in good faith and on reasonable grounds in its actions pursuant to 29 U.S.C. § 260 of the FLSA, the court should not award liquidated damages to plaintiffs. Section 260's threshold requirement is whether the employer acted in good faith and on reasonable grounds. *Id.* Once this threshold requirement has been attained, whether to award liquidated damages becomes a question for the court's discretion. Thus, a court may choose to deny the award of liquidated damages altogether or grant the award, either partially or fully. *Id.*

Plaintiffs relied on *Jones II* and *Lanehart* as demonstrative that this court should award liquidated damages. In both cases the court awarded partial liquidated damages equal to the amount of interest ostensibly due on plaintiffs' unpaid overtime compensation even though defendant acted in good faith and on a reasonable belief that no FLSA provision was violated. The *Jones II* court stated "[t]his approach is consistent with the well established view that liquidated damages under the FLSA are not punitive but rather provide a mechanism for compensating employees for the delay in payment of overtime wages." *Jones II,* 26 Wage & Hour Cas. (BNA) at

1605 (citations omitted); *see, e.g., McClanahan v. Mathews,* 440 F.2d 320, 326 (6th Cir.1971). *Jones II* further maintained that awarding liquidated damages was "necessary to compensate plaintiffs for the injury they suffered through loss of the benefit of investing their [overtime] pay at prevailing interest rates." *Jones II,* 26 Wage & Hour Cas. (BNA) at 1605. *Lanehart* concluded "that partial liquidated damages should be awarded in an amount equal to the amount of interest that would have been received on their unpaid overtime compensation." *Lanehart,* 26 Wage & Hour Cas. (BNA) at 1655. Accordingly, plaintiffs in the present action argue that they too are entitled to an award of liquidated damages.

Plaintiffs also attempted to collaterally estop the government from litigating the liquidated damages issue since that issue arguably had been unsuccessfully litigated three separate times prior to the present action, each decision involving the same plaintiffs, and the government failed to appeal any of the district court decisions unfavorable to it. *See Jones II,* 26 Wage & Hour Cas. (BNA) 1602; *Lanehart,* 26 Wage & Hour Cas. (BNA) 1654; *Cook II,* 855 F.2d 848. Defendant, on the other hand, contended that there is no mutuality of parties in this case and according to the Supreme Court ruling in *United States v. Mendoza,* 464 U.S. 154, 160, 104 S.Ct. 568, 572, 78 L.Ed.2d 379 (1984), non-mutual offensive collateral estoppel [5] is inapplicable against the government and, further, *Mendoza* is not limited solely to constitutional issues as plaintiffs maintained. Thus, the court must determine whether *Mendoza* prevents plaintiffs from using non-mutual collateral estoppel against the government.

Plaintiffs argued that *Mendoza*'s requirement of mutuality in cases involving the government was limited to constitutional issues and since no constitutional issues are involved here there was no requirement of mutuality. This construction of *Mendoza* is grounded in the following language:

[B]ecause the prescriptions of the United States Constitution are so generally directed at governmental action, many constitutional questions can arise only in the context of litigation to which the Government is a party. Because of those facts the Government is more likely than any private party to be involved in lawsuits against different parties which nonetheless involve the same legal issues.

A rule allowing non-mutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue.

*Id.* at 160, 104 S.Ct. at 572. To construe this language as narrowly as plaintiffs proposed is contrary to the Supreme Court's rationale in *Mendoza.* There the Supreme Court stated that *"Parklane Hosiery*'s approval of nonmutual [sic] offensive collateral estoppel is not to be extended to the United States." *Id.* at 158, 104 S.Ct. at 571. The Court made no reference to any limitation to particular issues, constitutional or otherwise. *Id.* Moreover, the wording "in such cases" relied upon by plaintiffs referred to cases already adjudicated against the United States in a prior lawsuit brought by the same or a different party, not to cases involving solely constitutional issues as plaintiffs purported. *Id.* at 158–64, 104 S.Ct. at 571–74. Consequently, because the Supreme Court in *Mendoza* has held that non-mutual collateral estoppel cannot be extended to the government, for collateral estoppel to apply in this case there must be mutuality of parties. *Id.*

Plaintiffs attempted to skirt the mutuality requirement by arguing that they were the same class of plaintiffs as those in *Jones II* and *Lanehart.* However, by definition, plaintiffs here may not be of the same class as in *Jones II* and *Lanehart.* Under the FLSA, "[n]o employee shall be a party plaintiff to [an] action unless he gives his consent in writing to become such a party and such consent is filed in the

---

5. "Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another

action against the same or a different party." *United States v. Mendoza,* 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571 n. 4, 78 L.Ed.2d 379 (1984).

court in which such action is brought." 29 U.S.C. § 216(b). A plaintiff may "opt-in" to become a party to a collective action and thereby elect to be bound by the rulings of the court in that case. However, by "opting-in" a plaintiff does not automatically join every other collective action involving similar issues.[6] All present plaintiffs were readily identifiable since they had received, or were entitled to receive, overtime back pay compensation. Thus, unless plaintiffs chose to "opt-in" to any of the prior actions, they are not the same class of plaintiffs as those in the *Jones II* and *Lanehart* cases, nor are they bound by the decisions of those courts. Therefore, there is no mutuality of parties in the present case, and hence no collateral estoppel. Notwithstanding this factor, there can be no collateral estoppel in the present case because collateral estoppel is limited to issues of fact and law actually litigated and necessarily determined by the court. In *Jones II* and *Lanehart* the award of liquidated damages fell short of this requirement. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In *Jones II* and *Lanehart*, the courts' finding that the government had acted in good faith precluded a mandatory award of liquidated damages under 29 U.S.C. § 216(b). Nonetheless, these courts eventually awarded liquidated damages. These awards were specifically based on the exercise of discretion, rather than on findings of fact or law. *Jones II*, 26 Wage & Hour Cas. (BNA) at 1604–05; *Lanehart*, 26 Wage & Hour Cas. (BNA) at 1655. A determination based on the discretion of a United States District Court cannot be said to actually litigate or necessarily determine issues of fact and law. *See Allen*, 449 U.S. at 94, 101 S.Ct. at 414; *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C.Cir. 1986). This court may refuse to award liquidated damages or it may award any amount that does not exceed the amount

specified in section sixteen if the employer acted in good faith. 29 U.S.C. § 260. It is solely within the court's discretion whether to award liquidated damages and, if so, how much.

■ There may well be other reasons but this court is of the opinion that the most practicable reason for which plaintiffs might be awarded liquidated damages is to make up for the delay in receiving their back pay. This is reasonable under the discretion which section 260 entrusts to the court and consistent with the awards in *Jones II* and *Lanehart*. Given absolutely no doubt whatsoever of the government's good faith, the court is unable to find any other reason that could possibly justify an award of liquidated damages. Moreover, this is the only basis upon which plaintiffs argue for liquidated damages. However, it is a long-established principle of statutory and federal common law that the government may not pay interest on claims against it unless "Congress has intended to waive the United States' immunity with respect to interest ... expressly...." *Library of Congress v. Shaw*, 478 U.S. 310, 318–19, 106 S.Ct. 2957, 2963–64, 92 L.Ed.2d 250 (1986); *United States ex rel. Angarica v. Bayard*, 127 U.S. 251, 260, 8 S.Ct. 1156, 1160, 32 L.Ed. 159 (1888). Such an express waiver must be explicit in its terms:

> [T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*Shaw*, 478 U.S. at 318, 106 S.Ct. at 2963 (quoting *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947)); *Bayard*, 127 U.S. at 260, 8 S.Ct. at 1160. The Supreme Court

---

**6.** The "opt-in" provision of FLSA section 16 should be contrasted with a typical Federal Rule of Civil Procedure 23 class action suit in which the class members, whether aware of the cause

of action or not, are bound as plaintiffs upon the filing of the cause of action unless they specifically "opt-out" of the class. Fed.R.Civ.P. 23. The opposite is true in the present case.

further held that compensation for delay is the equivalent of interest.

But the force of the no-interest rule cannot be avoided simply by devising a new name for an old institution:

"[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it."

.... Interest and a delay factor share an identical function. They are designed to compensate for the belated receipt of money. The no-interest rule has been applied to prevent parties from holding the United States liable on claims grounded on the belated receipt of funds, even when characterized as compensation for delay.

*Shaw*, 478 U.S. at 321–22, 106 S.Ct. at 2965 (quoting *United States v. Mescalero Apache Tribe*, 518 F.2d 1309, 1322, 207 Ct.Cl. 369 (1975)). If Congress had intended for the United States to pay interest on back wages or even liquidated damages based upon and specifically or generally equivalent to interest, it could have easily said as much. Therefore, in the absence of an express statutory waiver of the government's immunity with respect to interest, this court finds itself without authority to award liquidated damages as plaintiffs and all others similarly situated might desire.

## CONCLUSION

For these reasons, that portion of plaintiffs' motion for summary judgment tolling the statute of limitations is granted insofar as plaintiffs fit within the defined jurisdictional parameters of the continuing claims doctrine or the Soldiers' and Sailors' Civil Relief Act, thereby giving this court jurisdiction over those plaintiffs. Conversely, the court has no jurisdiction over those plaintiffs who do not fit within these parameters. Plaintiffs' motion for summary judgment seeking an award of liquidated damages for those plaintiffs over whom the court has jurisdiction is denied. Defendant's cross-motion for summary judgment is granted. This holding is also applicable to the consolidated cases identified in the Attachment to this Order. The Attachment is an integral part of the Order and is to be published as a part hereof. The Clerk of the court is directed to enter judgment dismissing the complaints accordingly. No costs.

IT IS SO ORDERED.

## ATTACHMENT 1

| No. | Case |
|-----|------|
| 1. 669–85C | Charles M. Doyle, et al. |
| 2. 41–86C | Carl L. Anderson, et al. |
| 3. 127–86C | John Menzies, et al. |
| 4. 179–86C | John E. Brazier, et al. |
| 5. 350–86C | Robert F. Abad, et al. |
| 6. 438–86C | Walter A. Alexander, et al. |
| 7. 516–86C | Michael P. Anderson, et al. |
| 8. 559–86C | Douglas A. Aquiar, et al. |
| 9. 576–86C | Alan F. Abreu, et al. |
| 10. 628–86C | James L. Abbott, et al. |
| 11. 720–86C | Julian D. Balinbin, et al. |
| 12. 128–87C | Leroy William Annis, et al. |
| 13. 201–87C | Deborah K. Bailey, et al. |
| 14. 287–87C | Terry L. Anglen, et al. |
| 15. 334–87C | Randall B. Bales, et al. |
| 16. 476–87C | Deverne Aaron, et al. |
| 17. 717–87C | Elmer Ackley, et al. |
| 18. 734–87C | Alan A. Abreu, et al. |
| 19. 739–87C | Narciso Alonzo, Jr., et al. |
| 20. 777–87C | Edgar A. Algere, Jr., et al. |
| 21. 145–88C | Louis Adamo, et al. |
| 22. 169–88C | James M. Agee, et al. |

| No. | Case |
|-----|------|
| 23. 206–88C | Joseph Abril, Jr., et al. |
| 24. 443–88C | Michael J. Bowen, et al. |
| 25. 511–88C | James S.C. Aunkst, et al. |